**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Specialty Insurance Company, | No. CV-18-08092-PCT-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Dorn Homes Incorporated, | |
| Defendant. | |

Before the Court is the parties' Joint Statement of Discovery Dispute Regarding Insurance Reserves. (Doc. 131.) For the reasons stated herein, Plaintiff United Specialty Insurance Company ("Plaintiff" or "USIC") must produce unredacted versions of documents containing information related to the reserves for Defendant Dorn Homes Inc.'s ("Defendant" or "Dorn") claims, including any previously withheld documents.[1]

## I. BACKGROUND

Dorn argues that USIC should be required to produce "redacted and withheld documents containing information related to reserves for Dorn's claims." (Doc. 131 at 2.) Dorn argues that reserve information is relevant and that USIC has waived any privilege or protection through "disclosure, testimony, and failure to assert privilege." (*Id*.) USIC, however, argues that the reserve information is "wholly irrelevant to the instant action, as well as being confidential and proprietary business information." (*Id*. at 3.) USIC notes that

---

[1] The parties did not request oral argument. After full review of the parties' positions, the Court believes that oral argument would not significantly aid the decisional process. See Fed.R.Civ.P. 78(b) (court may decide motions without oral hearing); LRCiv 7.2(f) (same).

it has redacted only the "specific dollar amount attributable to its thought process behind setting the claim's reserves." (*Id.*)

The term "reserve" means "something retained or stored for future use; esp., a fund of money set aside by a bank or an insurance company to cover future liabilities." Black's Law Dictionary (11th ed. 2019). "The discoverability of reserve information usually arises in insurance bad faith cases." *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, No. 214CV01232APGGWF, 2017 WL 2292818, at *7 (D. Nev. May 25, 2017).

## II. ANALYSIS

"District courts have come out both ways" on the issue of whether reserve information is permitted discovery under Federal Rule of Civil Procedure 26. *Metro. Life Ins. Co. v. Ogandzhanova*, No. CV-12-372-PHX-GMS, 2013 WL 1442581, at *2 (D. Ariz. Apr. 9, 2013).[2] *See also Dogra v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-01841-GMN, 2015 WL 5086434, at *2 (D. Nev. Aug. 25, 2015) ("Court decisions in this district and elsewhere are divided on whether reserves set by an insurer on a claim are relevant and discoverable.")

This Court has noted that "[c]entral to the relevance (or lack thereof) of reserve information in a given case is the method of calculation." *Ogandzhanova* at *2. That is, "[i]f the insurers can show their calculations do not include analysis of the factual or legal merits of the insured's specific claim, but instead rely on automatic factors, then the relevance of reserve information diminishes significantly. On the other hand, courts have granted motions to compel production of reserve information when the insurers have failed to produce evidence that the reserve arithmetic does not include analysis of the claim's merit." *Id*. (citation omitted).

In *Ogandzhanov*, the Court declined to compel production of the insurer's reserve information based on the following analysis:

---

[2] *See, e.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 644 (D.Kan.2007) (relevant); *Bernstein v. Travelers Ins. Co.*, 447 F.Supp.2d 1100, 1105 (N.D.Cal.2006) (same). *But see, e.g., Imperial Textiles Supplies Inc. v. Hartford Fire Ins. Co.*, 6:09–CV–03103–JMC, 2011 WL 1743751 at *4 (D.S.C. May 5, 2011) (irrelevant); *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J.1989) (same).

> MetLife has shown that it does not analyze the factual and legal merit of a claim when it sets and adjusts the reserve amount, and did not do so with Ogandzhanova. Enid Reichert, a Vice President and Actuary at MetLife, stated that the reserve calculation is a factor of assumed average claim termination rates determined by MetLife actuaries from multi-year studies and limited claim profile information, such as the date of disability, monthly benefit amount, policy terms, and the age of the claimant. (Doc. 168–1, Ex. 1 ¶¶ 2–4.) The reserves "do not take into account any facts specific to the claim.... Specifically, the reserve does not take into account the merits of the claim, that is whether the claim for benefits is strong or weak." (Id. ¶ 5.) Claims personnel are not involved in the calculation of claim reserves. (Id. ¶ 6; Doc. 168–2, Ex. 2 ¶¶ 2–4.) It is an automatic calculation divorced from the merits of a specific claim. This is a case where the method of MetLife's reserve calculation takes reserve information out of the realm of relevancy.

*Id. See also Paul Johnson Drywall, Inc. v. Phoenix Ins. Co.*, No. CIV. 13-8124-PCT-PGR, 2014 WL 1764126, at *3 (D. Ariz. May 5, 2014) (compelling production of reserve information because "The record shows that the reserve was adjusted based on Traveler's assessment of the merits of Plaintiffs' claims, in contrast to the automatic factors used by the insurer in *Ogandzhanova*.")

In this case, however, according to the record before the Court, the reserve amount *does* account for facts and analysis specific to the relevant claims. The following are excerpts from the deposition of Thomas Brown, Plaintiff's Rule 30(b)(6) corporate representative:

> Q. All right. Well, so basically you are telling me internally it took you a long time to figure out how you were going to put homes with respect to which policy?
> A. No, it didn't take us that long. It was more about the money, figuring out the -- how we were going to -- the proper amount of money to reserve on each file. That was the complexity.
> (Doc. 131-1 at 11)

…

> Q. All right. So you can put that aside. So having gone through your claim notes, does it refresh your recollection in any way further about conversations you had directly with Mr. Fisher?
> A. Well, I know when we were completing the large loss report we talked about this, the case, the Desert Mountain case, because a big issue on this is if we were in any other state, virtually any other state, faulty workmanship is not covered. And so we had to explain why there is potential coverage here to our reinsurers, why we are putting up that large of a reserve.
>
> (Doc. 131-1 at 17–18.)
>
> …
>
> Q. Have you, in your work on the case, on a home-by-home basis, applied Desert Mountain and made a determination as to what's covered and what's not covered?
> MR. GRAIF: Form.
> THE WITNESS: No.
> Q. In terms of setting reserves, you have done that in a sense, haven't you?
> A. We would have to look to the reserve section.
> Q. You told me you set the reserves at 2.3 million.
> A. Right.
> Q. Which is, I believe, the repair damages asked for by Dorn Home?
> A. Right.
> MR. GRAIF: Objection; form.
> Q. So in terms of setting reserve, you accepted that, correct?
> A. Correct.
> Q. Because you want the reinsurers to know the exposure. True?
> A. The potential exposure, yeah.
>
> (Doc. 131-1 at 21–22.)

Taken together, this testimony indicates that the reserve amount incorporates the damages requested by Dorn, as well as consideration of *Desert Mountain Properties Ltd. Partnership v. Liberty Mutual Fire Insurance Co.*, 225 Ariz. 194 (App. 2010), *aff'd*, 226 Ariz. 419 (2011). Plaintiff has therefore not demonstrated that the "calculations do not include analysis of the factual or legal merits of the insured's specific claim." *Ogandzhanova* at *2.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Dorn Homes, Inc.'s request for unredacted versions of documents containing information related to the reserves in this matter (part of Doc. 131) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff United Specialty Insurance Company must produce, no later than February 7, 2020 (*see* Doc. 118 at 2), any unredacted versions of documents, including any previously withheld documents, containing information related to the reserves for Dorn's claims in the pending matter.

Dated this 27th day of January, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge